1

PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (54752)

2

philip.warden@pillsburylaw.com
ANNE A. FERGUSON (SBN 335541)

3

anne.ferguson@pillsburylaw.com
Four Embarcadero Center, 22nd Floor

4

Post Office Box 2824
San Francisco, CA 94126-2824

5

Telephone:     415.983.1000
Facsimile:     415.983.1200

6

7

PILLSBURY WINTHROP SHAW PITTMAN LLP
ROBERT WALLAN (126480)

robert.wallan@pillsburylaw.com

8

DAVID STANTON (208079)
david.stanton@pillsburylaw.com

9

725 South Figueroa Street, 36th Floor
Los Angeles, CA. 90017-5406

10

Telephone:     213.488.7100
Facsimile:     213.629.1033

11

12

Attorneys for Defendant Hyundai Steel Company

IN THE UNITED STATES BANKRUPTCY COURT

13

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

14

| | |
|---|---|
| **IN RE:** | No. 8:17-bk-14535-ES |
| PRIME METALS U.S.A., Inc., | CHAPTER 7 |
| Debtor. | Adversary Proc No. 8:19−ap−01216−ES |
| | **DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY ADJUDICATION** |
| RICHARD A. MARSHACK, solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Prime Metals, U.S.A., Inc., | Judge:         Hon. Erithe A. Smith |
| Plaintiff, | Courtroom:    5A |
| | Hearing Date: June 16, 2022 |
| vs. | Time:          2:00 PM |
| HYUNDAI STEEL COMPANY, a Korean corp., | [Notice of Motion, Motion, Statement of Undisputed Facts and Conclusions of Law, Declarations of Jin Oh, Yong Joo Lee, Philip Warden, and Bruce Strombom, |
| Defendant. | Request for Judicial Notice, Appendix of Unpublished Decisions and [Proposed] Order Granting Motion Filed Concurrently Herewith] |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ............................... 1

II.    JURISDICTION .......................................................................................................... 4

III.    PROCEDURAL HISTORY......................................................................................... 4

    A.    This Adversary Proceeding........................................................................ 4

    B.    Related Litigation....................................................................................... 5

        1.    The R-Techo Adversary Proceeding............................................. 5

        2.    The Byun Case................................................................................ 5

        3.    The SIC Metals Case ..................................................................... 6

IV.    UNDISPUTED MATERIAL FACTS ......................................................................... 6

    A.    Plaintiff's Damages Disclosures and Discovery Responses....................... 6

    B.    The Hyundai 1-Year Transfers .................................................................. 9

    C.    The R-Techo Transfers .............................................................................. 10

    D.    The CMI Notes Transfer ............................................................................ 11

    E.    Hyundai's Relationships with Prime and R-Techo..................................... 13

V.    LEGAL STANDARD................................................................................................. 16

VI.    PLAINTIFF CANNOT MEET HIS BURDEN ON ANY OF HIS CLAIMS ...................... 17

    A.    Plaintiff Cannot Meet His Burden as to the Hyundai 1 Year Transfers
        (Counts 4 and 5)........................................................................................ 17

        1.    Plaintiff Cannot Prove Hyundai Received Prime's Property......... 17

        2.    Plaintiff Cannot Prove Prime Owed an Antecedent Debt to Hyundai.......... 18

        3.    Plaintiff Cannot Prove Hyundai Was a Statutory Insider of Prime ............... 19

        4.    Plaintiff Cannot Prove Hyundai Was a Non-Statutory Insider of
        Prime ............................................................................................ 20

    B.    Plaintiff Cannot Meet His Burden as to the R-Techo Transfers  (Counts 1 -3)......... 22

1.   Plaintiff Cannot Prove Hyundai Received Funds Fraudulently Transferred from Prime to R-Techo ............................................................... 22

2.   Plaintiff Cannot Prove Hyundai Controlled Prime Through R-Techo .......... 23

3.   Plaintiff May Not Impute Hyundai's Intent to Prime ................................... 23

4.   Plaintiff Lacks Standing to Pursue the R-Techo Transfer Claim ................. 23

5.   Plaintiff Cannot Prove Prime Funds Were Transferred to R-Techo for Hyundai's "Benefit" ...................................................................................... 24

C.   Plaintiff Cannot Meet His Burden as to the CMI Notes Transfer  (Counts 1-3) ............................................................................................................................ 25

1.   Prime Benefitted from Purchasing and Selling the CMI Notes .................... 25

2.   Plaintiff Cannot Prove His Theory of Windfall Profits ............................... 26

3.   Plaintiff Is Bound by His Failure to Specify Damages ................................. 27

4.   Plaintiff Waived His Right to Challenge the CMI Notes Transfer ............... 28

5.   Plaintiff Cannot Prove Prime Received Less Than "Reasonably Equivalent Value" ....................................................................................... 29

6.   Plaintiff Cannot Prove the CMI Notes Transfer Was Not at Arm's Length ........................................................................................................... 30

7.   Plaintiff May Not Impute Hyundai's Intent to Prime ................................... 31

D.   Plaintiff Cannot Meet His Burden on the Alter Ego Claim (Count 6) ...................... 31

VII.   RELIEF REQUESTED ............................................................................................. 33

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

Page(s)

## Cases

*21 Century Fin. Serv., LLC v. Manchester*,
255 F.Supp.3d 1012 (S.D. Cal. June 8, 2017) ........................................................31

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*,
34 F.3d 800 (9th Cir.1994) .......................................................................21, 27

*Am. Int'l Group, Inc. v. Am. Int'l Bank*,
926 F.2d 829 (9th Cir. 1991) ...........................................................................17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................16

*In re Automated Fin. Corp.*,
2011 WL 10502417 (Bankr. C.D. Cal. Jan. 25, 2011) ..........................................29

*In re Berr*,
172 B.R. 299 (B.A.P. 9th Cir. 1994)..................................................................24

*In re Brobeck, Phleger & Harrison LLP*,
408 B.R. 318 (Bankr. N.D. Cal. 2009) ...............................................................21

*In re Bullion Rsrv. of N. Am.*,
922 F.2d 544 (9th Cir. 1991) .......................................................................24, 25

*Cambridge Elec. Corp. v. MGA Elec., Inc.*,
227 F.R.D. 313 (C.D. Cal., Jun. 22, 2004) ..........................................................33

*CAMOFI Master LDC v. Associated Third Party Administrators*,
No. 16-CV-00855-EMC, 2018 WL 839134 (N.D. Cal. Feb. 13, 2018) ....................24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................16, 17

*Matter of Christian & Porter Aluminum Co.*,
584 F.2d 326 (9th Cir. 1978) ...........................................................................31

*U.S. Bank Nat. Ass'n ex rel. CW Capital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*,
138 S. Ct. 960 (2018)......................................................................................19

*Day v. Sears Holdings Corp.*,
930 F.Supp.2d 1146 (C.D. Cal. 2013) ................................................................17

1

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) (en banc) ............................................................16

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001 ................................................................................32

*Drayton v. Eastlink Prods., Inc.*,
    No. 217CV06408VAPPJWX, 2019 WL 650418 (C.D. Cal. Jan. 2, 2019) ............27

*In re Elrod Holdings Corp.*,
    421 B.R. 700 (Bankr. D. Del. 2010) ...................................................................21

*Erhart v. Bofi Holding Inc.*,
    No. 15-cv-02287-BAS-NLS, 2022 BL 13287 (S.D. Cal. Jan. 13, 2022) .............8, 9

*In re Fitness Holdings Int'l, Inc.*,
    714 F.3d 1141 (9th Cir. 2013) ............................................................................30

*In re Friedman*,
    126 B.R. 63 (B.A.P. 9th Cir. 1991)......................................................................21

*Frontline Med. Associates, Inc. v. Coventry Health Care*,
    263 F.R.D. 567 (C.D.Cal. Nov. 6, 2009) ...............................................................8

*FutureSource LLC v. Reuters Ltd.*,
    312 F.3d 281 (7th Cir. 2002) ..............................................................................29

*Gerritsen v. Warner Bros. Entertainment Inc.*,
    116 F.Supp.3d 1104 (U.S. Dist. Court, C.D. California 2015)...............................32

*Goodman v. Staples The Off. Superstore, LLC*,
    644 F.3d 817 (9th Cir. 2011) ..............................................................................27

*Hayes v. Gross*,
    982 F.2d 104 (3d Cir. 1992).................................................................................24

*Hollinger v. Titan Capital Corp.*,
    914 F.2d 1564 (9th Cir. 1990) ............................................................................32

*Matter of James Wilson Assocs.*,
    965 F.2d 160 (7th Cir. 1992) ..............................................................................28

*In re Jong Uk Byun*,
    Case No. 2:20-bk-17433-VZ ......................................................................... *passim*

*Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...........................................................................................17

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*Mesler v. Bragg Mgmt. Co.*,
   39 Cal. 3d 290 (1985) ...................................................................................32

*Mid- Century Ins. Co. v. Gardner*,
   9 Cal. App. 4th 12015 (1992) ...................................................................32, 33

*In re N. Merch., Inc.*,
   371 F.3d 1056 (9th Cir. 2004) ..................................................................30

*In re OCS, Inc.*,
   552 F.3d 413 (5th Cir. 2008) ....................................................................17

*In re Oracle Corp. Sec. Lit.*,
   627 F.3d 376 (9th Cir. 2010) ...............................................................16, 17

*Orloff v. Allman*,
   819 F.2d 904, 909 (9th Cir. 1987) ............................................................32

*Pac. Bell Tel. Co. v. 88 Connection Corp.*,
   No. 15-cv-04554-LB, 2016 BL 189424 (N.D. Cal. June 14, 2016) ...................32

*Pac. Landmark Hotel, Ltd. v. Marriott Hotels, Inc.*,
   19 Cal. App. 4th 615 (1993) .....................................................................31

*In re Parker*,
   499 F.3d 616 (6th Cir. 2007) ....................................................................29

*In re Prejean*,
   994 F.2d 706 (9th Cir. 1993) ....................................................................30

*Rollins Burdick Hunter of Southern California, Inc. v. Alexander & Alexander*
   *Services, Inc.*,
   206 Cal.App.3d 1 (1988) .........................................................................32

*SIC Metals, Inc., et al., v. Hyundai Steel Co., et al.*
   Case No. SACV 18-00912-CJC(PLAx) .................................................6, 24

*Silver State Broad., LLC v. Bergner*,
   705 F. App'x 640 (9th Cir. 2017).................................................................9

*Sluimer v. Verity*,
   628 F. Supp. 2d 1099 (N.D. Cal. 2008), affirmed at 606 F.3d 584 (9th Cir. 2010) ...............16

*Smith v. Arthur Andersen LLP*,
   421 F.3d 989 (9th Cir. 2005) ....................................................................24

*F.T.C. v. Stefanchik*,
   559 F.3d 924 (9th Cir. 2009) ....................................................................17

3

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*In re The Vill. at Lakeridge,*
LLC, 814 F.3d 993 (9th Cir. 2016) ...........................................................................19, 20, 21

*In re Thorpe Insulation Co.,*
677 F.3d 869 (9th Cir.2012) .......................................................................................28

*In re U.S. Medical, Inc.,*
531 F.3d 1272 (10th Cir. 2008) ...........................................................................19, 20

*In re Universal Clearing House Co.,*
62 B.R. 118 (D. Utah 1986) ........................................................................................24

*In re Winstar Commc'ns, Inc.,*
554 F.3d 382 (3d Cir. 2009) ........................................................................................20

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.,*
259 F.3d 1101 (9th Cir. 2001) ...............................................................................9, 27

*In re Yonkers Hamilton Sanitarium Inc.,*
22 B.R. 427 (Bankr. S.D.N.Y. 1982), aff'd, 34 B.R. 385 (S.D.N.Y. 1983) ...........................21

*In re Zaleha,*
162 B.R. 309 (Bankr. D. Idaho 1993) .........................................................................28

<u>Statutes and Codes</u>

11 United States Code
    Section 101(31) ..................................................................................................19, 20
    Section 101(31)(B)(iii) .............................................................................................19
    Section 546(1)(2) .....................................................................................................1
    Section 547(b) ...................................................................................................17, 18
    Section 548(a)(1) ....................................................................................................22
    Section 548(a)(1)(B) ...............................................................................................29
    Section 1109(b) ......................................................................................................28

28 United States Code
    Section 157 .............................................................................................................4
    Section 157(b) .........................................................................................................4
    Section 1334 ...........................................................................................................4
    Section 2201 ...........................................................................................................4

California Civil Code
    Section 2924k(a) ....................................................................................................26
    Section 3302 .....................................................................................................13, 26
    Section 3439.03 .....................................................................................................30
    Section 3439.04(a)(2) .............................................................................................29

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

4866-1703-9902                                                                                      No. 8:19–ap–01216–ES

United States Bankruptcy Code
    Chapter 7 ............................................................................................................1
    Section 550(a) ...................................................................................................27

### Rules and Regulations

Federal Rules of Bankruptcy Procedure
    Rule 26(a)(1)(iii) ...............................................................................................6
    Rule 26(a)(2)(E) ................................................................................................8
    Rule 56 .............................................................................................................16
    Rule 56 .............................................................................................................16
    Rule 56(a) ........................................................................................................16
    Rule 56(c)(1)(a) ...............................................................................................16
    Rule 65 .............................................................................................................29
    Rule 2018(a) ....................................................................................................29
    Rule 7026 ......................................................................................................6, 8
    Rule 7037 ....................................................................................................8, 27
    Rule 7056 ...........................................................................................................1
    Rule 7065 .........................................................................................................29

Federal Rules of Civil Procedure
    Rule 26 .........................................................................................................6, 27
    Rule 26(a) ..........................................................................................................8
    Rule 26(a)(iii) ..................................................................................................27
    Rule 37(c)(1) ..........................................................................................8, 9, 27
    Rule 56 ...............................................................................................................1
    Rule 56(a) ........................................................................................................17
    Rule 56(c) ........................................................................................................16

Florida Administrative Code
    Rules 13-22 ........................................................................................................3

### Other Authorities

California Mortgages, Deeds of Trust, and Foreclosure Litigation §2.1 (4th ed. Cal.
    CEB 2021) .......................................................................................................26

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

4866-1703-9902        No. 8:19–ap–01216–ES

Defendant Hyundai Steel Company ("**Hyundai**") submits this memorandum of points and authorities in support of its motion for summary judgment, or in the alternative, for partial summary adjudication, as to the remaining claims for relief in plaintiff Richard A. Marshack's ("**Plaintiff**") First Amended Complaint ("**FAC**") pursuant to Federal Rules of Bankruptcy Procedure, Rule 7056 and Federal Rules of Civil Procedure, Rule 56.

## I.    PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Hyundai is a Korean company with its principal place of business in Korea. Separate Statement of Undisputed Facts and Conclusions of Law ("**SUF**") 1. Hyundai supplies metal to Hyundai Motor Group and to the shipbuilding and construction industries in Korea. SUF 2. Debtor Prime Metals U.S.A. Inc. ("**Prime**") is a California corporation based in California. SUF 3. Hyundai began purchasing scrap steel from Prime in December 2014. SUF 4. On October 1, 2015, Hyundai and Prime entered into a one-year supply contract ("**Supply Contract**") wherein Hyundai agreed to purchase and Prime agreed to sell scrap metal for a one-year term, which automatically renewed for successive year terms on an annual basis unless timely notice of termination was given. SUF 5 (*see* Declaration of Jin Oh ("**Oh Decl**.") ¶ 8 and Ex. A). Pursuant to the Supply Contract, and separate purchase agreements for each shipment, Hyundai made successive purchases of scrap steel from Prime, with the final purchase on April 9, 2017. SUF 6. All of Hyundai's purchases under the Supply Contract were paid in full. SUF 7.

On November 17, 2017, Prime filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On November 15, 2019, two days before expiration of the two-year statute of limitations, Plaintiff filed his complaint in the present adversary proceeding against Hyundai (the "**Complaint**"). Compl., ECF No. 1; 11 U.S.C. § 546(1)(2). In his original Complaint, Plaintiff asserted ten claims for relief. *Id.* Six of those claims remain in the FAC, after the Court granted Hyundai's motion to dismiss, striking five counts from the eleven-count FAC. Order on Def.'s Mot. to Dismiss First Am. Compl., ECF No. 51.

Five of the remaining claims seek to avoid three alleged transfers of money or property by Prime to Hyundai, and the sixth count is an alter ego claim that depends on the Court avoiding the

DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

three alleged transfers and finding control and damages, which do not exist. FAC. Plaintiff's FAC

alleges that the three alleged transfers were part of a scheme through which Hyundai controlled all

aspects of all decisions made by Prime and used that control to extract all value from Prime either

directly, or indirectly through R-Techo, Co. Ltd. ("**R-Techo**"), a separate Korean entity. *Id.* For the

reasons described in detail below, Plaintiff cannot prove that Hyundai directly or indirectly

controlled the decisions by Prime, or that Hyundai used its alleged control to strip Prime of value

through any of these three challenged transfers, or that Prime's creditors were harmed by any of the

challenged transfers. Since Plaintiff cannot prove the required elements as to any of these three

transfers, Hyundai is entitled to summary judgement as to each related claim (Counts 1-5). Likewise,

without the requisite evidence of control and without any damages to Prime's creditors, Plaintiff's

alter ego claim also fails (Count 6).

The first transfer for purposes of this motion (the "**Hyundai 1 Year Transfers**"), alleged in

Counts 4 and 5 of the FAC, is a preference claim seeking to recover the value of scrap steel that

Prime allegedly transferred to Hyundai. FAC 22-25. Counts 4 and 5 fail with respect the Hyundai 1

Year Transfers because the alleged preferential transfers were not transfers of Prime's scrap steel (or

anything else) to Hyundai; they were instead ***payments*** Hyundai made to Prime for scrap steel that

Hyundai purchased. Plaintiff simply misconstrues the relevant records. Counts 4 and 5 also fail as to

the Hyundai 1 Year Transfer because Plaintiff cannot establish that Hyundai was either a statutory or

a non-statutory insider of Prime, and none of the alleged transfers occurred within ninety days of

Prime's bankruptcy filing.

The next transfer for purposes of this motion (the "**R-Techo Transfers**"), alleged in Counts

1, 2 and 3 of the FAC, is a supposed $1.8 million transfer that Hyundai is alleged to have received

from R-Techo, out of a total alleged fraudulent transfer from Prime to R-Techo of approximately $4

million. FAC 19:10 – 20:11. Plaintiff has filed a separate adversary proceeding against R-Techo,

seeking to avoid an alleged $4 million transfer from Prime, yet even if Plaintiff were to secure such

an order, Counts 1, 2 and 3 fail in this action because Plaintiff cannot prove Hyundai received any

funds fraudulently transferred from Prime to R-Techo. Further, Plaintiff frames the R-Techo

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    Transfers as an alleged scheme whereby R-Techo supposedly underpaid for Prime's shares when it

2    acquired the company. FAC 11:6-11. But even if that were true, a shareholder's claim that it was not

3    paid a fair price for corporate stock is not a claim of the corporation itself, it is a claim of the

4    corporation's shareholders, and here such a claim is not the property of Prime's bankruptcy estate

5    and may not be pursued in this action by Plaintiff. Indeed, Prime's former shareholders actually

6    brought such a claim and lost their case in court. Warden Decl. ¶¶ 20-24; RJN Exs. I-O.

7         The third transfer for purposes of this motion (the "**CMI Notes Transfer**") is alleged in

8    Counts 1, 2 and 3 of the FAC and challenges Hyundai's purchase of certain notes issued by Central

9    Metals, Inc. (the "**CMI Notes**"). FAC 13-22. Plaintiff's sole explanation as to why the CMI Notes

10   Transfer is improper is that Hyundai supposedly received a windfall to which Prime was entitled.

11   But Prime was paid full value for the CMI Notes. Plaintiff's contentions of lost value at the time of

12   Hyundai's purchase the CMI Notes are based on unfounded speculation that Hyundai could have

13   foreclosed on the real property securing the notes, bid in at a foreclosure sale, and then taken title to

14   real property worth millions more than the value of the CMI Notes themselves. Plaintiff cannot

15   prevail on Counts 1, 2 or 3 as to the CMI Notes Transfer because there was no foreclosure sale,

16   Hyundai did not bid in at a foreclosure sale, Hyundai did not take title to any real property, and

17   neither Hyundai nor Prime were ever legally entitled to a windfall by virtue of holding the CMI

18   Notes. To the contrary, Hyundai had to spend millions of dollars over several years to enforce the

19   CMI Notes. As a debtor in bankruptcy, Prime did not have such resources to fund enforcement itself.

20   Moreover, Hyundai paid Prime more than the face value of the CMI Notes, even compensating

21   Prime for unpaid interest upon which Central Metals had defaulted. By virtue of this payment from

22   Hyundai, Prime was able to extinguish the loan it had taken out to purchase the CMI Notes. Plus,

23   even after a very expensive legal battle, which Prime could not have funded, Hyundai received less

24   than it was entitled to under CMI Notes, pursuant to a sale order approved by the Bankruptcy Court

25   Judge overseeing the case bought by the maker of the CMI Notes. Accordingly, Prime's creditors

26   were not harmed by this transaction, and Hyundai paid reasonably equivalent value when it acquired

27   the CMI Notes. The CMI Notes Transfer claims are further premised on unsubstantiated allegations

28

3

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

4866-1703-9902                                                    No. 8:19−ap−01216−ES

1    of improper control, which Plaintiff cannot prove.

2        Finally, the alter ego count (Count 6) is premised on the three challenged transfers described

3    above and on unsubstantiated allegations that Hyundai was an insider in control of Prime. FAC 25:8

4    – 28:11. For the reasons set forth herein, Plaintiff cannot prove its fraudulent transfer claims, cannot

5    prove that Hyundai was a Prime insider or in control of Prime, directly or indirectly, and cannot

6    prove that Hyundai caused Prime any damages. Therefore, the alter ego claim fails in its entirety.

7    **II.    JURISDICTION**

8        This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§

9    157, 1334, and 2201. This matter is a core proceeding under 28 U.S.C. § 157(b). This adversary

10    proceeding is related to and arises in Prime's bankruptcy case.

11    **III.    PROCEDURAL HISTORY**

12        **A.    This Adversary Proceeding**

13        On November 15, 2019, Plaintiff launched this adversary proceeding against Hyundai

14    originally based on a ten-count Complaint. Compl., ECF No. 1. On April 17, 2020, this Court

15    granted Hyundai's first motion to dismiss with leave to amend as to all counts of the Complaint

16    except the sixth claim for a temporary restraining order and the ninth claim for substantive

17    consolidation, which were dismissed with prejudice. Order Granting Def.'s Mot. Dismiss, Apr. 17,

18    2020, ECF No. 26. On May 20, 2020, the Court entered an order granting Hyundai's Motion to

19    Dismiss for Forum Non Conveniens, dismissing with prejudice the Complaint's first claim for relief

20    for breach of contract and second claim for breach of the covenant of good faith and fair dealing.

21    Order Granting Def.'s Mot. Dismiss for Forum Non Conveniens, ECF No. 35.

22        On June 1, 2020, Plaintiff filed the FAC, with eleven claims for relief. FAC. On July 1, 2020,

23    Hyundai filed a motion to dismiss the FAC (ECF No. 38), which the Court granted in part by order

24    dated October 14, 2020. Order on Def.'s Mot. to Dismiss FAC, ECF No. 51. Specifically, Counts 7

25    through 11 were dismissed with prejudice, leaving only Counts 1 through 6, and the Hyundai

26    Transfers were dismissed from Counts 1-3. Thus, following the Court's October 14, 2020, Order,

27    Counts 1, 2 and 3 pertain only to the CMI Notes Transfer and R-Techo Transfers, alleging that they

28

4

1  are fraudulent transfers (Count 1), constructive fraudulent transfers (Count 2), and recoverable as

2  property of the bankruptcy estate (Count 3). Count 4 seeks to avoid the Hyundai 1 Year Transfers as

3  preferential transfers, and Count 5 requests an order to recover the Hyundai 1 Year Transfers as

4  alleged preferential transfers. Count 6 requests an order declaring that Prime is the alter ego of

5  Hyundai and that Hyundai's assets may be used generally to satisfy the claims of Prime's creditors.

6      **B.    Related Litigation**

7          Three other court actions relate to this adversary proceeding.

8              **1.    The R-Techo Adversary Proceeding**

9          In *Richard A. Marshack v. R-Techo, Co., Ltd.*, Adv. Proc. No.: 8:19-ap-01215-ES (the "**R-**

10  **Techo Adversary Proceeding**"), Plaintiff seeks to recover approximately $4 million of alleged

11  fraudulent transfers from Prime to R-Techo, the alleged initial transferee. Request for Judicial Notice

12  ("**RJN**"), Ex. B (Complaint). The R-Techo Transfers in this case are a subset of the $4 million at

13  issue in the R-Techo Adversary Proceeding, with Hyundai as the alleged subsequent transferee. FAC

14  30. The docket in the R-Techo Adversary Proceeding confirms that an answer was filed in that case

15  and that discovery is ongoing. RJN, Ex. A (Docket).

16              **2.    The Byun Case**

17          The CMI Notes were secured by real estate owned by Jong Uk Byun ("**Mr. Byun**") and his

18  wife, Bok Soon Byun ("**Mrs. Byun**"). Mr. Byun filed a petition for relief under Chapter 11 of the

19  Bankruptcy in the Central District of California, captioned as *In re Jong Uk Byun*, Case No. 2:20-bk-

20  17433-VZ (the "**Byun Case**"). RJN, Ex. D (Petition). As reflected in the docket, Mr. Byun disputed

21  Hyundai's right to collect on the CMI Notes and against the real estate collateral securing the notes.

22  RJN, Exs. C (Docket); Ex. D (Order on Debtor's Motion). Judge Zurzolo ultimately approved a sale

23  order that allowed the real property collateral to be sold at a Section 363 sale to a good faith

24  purchaser free and clear of liens, claims and encumbrances, and Hyundai was paid $26,075,000 from

25  sale proceeds pursuant to an agreement reached with Mr. Byun to compromise Hyundai's secured

26  claims. RJN, Ex. G (Order Granting Mot. for Sale of 8201 Santa Fe Avenue, Huntington Park, CA

27  ("**Sale Order**")) 8:26-28, 9:6-14, 11:3-14. The court-approved amount that Hyundai agreed to

28

5

accept to release its lien represented a discount from the amount then owed on the notes, which exceeded $28 million by that time. *Id.*

### 3.    The SIC Metals Case

In a separate matter, *SIC Metals, Inc., et al., v. Hyundai Steel Co., et al.* Case No. SACV 18-00912-CJC(PLAx) (the "**SIC Metals Case**"), Hyundai's termination of Prime's Supply Contract and R-Techo's alleged underpayment for Prime's stock were litigated to a final judgment. RJN, Ex. H (Docket). That litigation, brought against Hyundai, R-Techo, and Ernst & Young, was adjudicated by Judge Carney of the United States District Court, Central District of California. *Id.* The plaintiffs there, former Prime shareholders, asserted claims against Hyundai based on allegations that wrongfully terminated the Supply Contract that governed Hyundai's purchase of scrap steel from Prime. RJN, Exs. I (Third Amended Complaint), K (Fourth Amended Complaint). Judge Carney granted Hyundai's motion for summary judgment on the ground that Hyundai acted legitimately to enforce its contractual rights under the Supply Contract when it terminated the Supply Contract due to Prime's performance issues. RJN Ex. K (Order Granting Motion for Summary Judgment) (the "**SIC Hyundai Order**") at 11. The former Prime shareholders also brought claims in the SIC Metals Case against Hyundai and R-Techo, asserting that the purchase price they received for Prime's stock was "artificially low," but Judge Carney dismissed those claims. RJN Exs. J (Order Granting Motion to Dismiss Third Amended Complaint), L (Order Party Granting Motion to Dismiss Fourth Amended Complaint), M (Order re Dismissal as to R-Techo) (the "**SIC R-Techo Order**"). Both the SIC Hyundai Order and the SIC R-Techo Order are dispositive, final orders, and appeals to the Ninth Circuit in that case were denied without argument. RJN Ex. O.

## IV.    UNDISPUTED MATERIAL FACTS

### A.    Plaintiff's Damages Disclosures and Discovery Responses

In his Rule 26 initial disclosures, Plaintiff was required to make "a computation of each category of damages claimed" and "make available for inspection…the documents…on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(iii); Fed. R. Bankr. P. 7026 (applying FRCP 26 to adversary proceedings).

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, however, merely promised forthcoming documents and provided no computation of damages, offering only scant boilerplate by way of disclosures:

**FRCP 26(a)(1)(A)(ii)**

A copy of all documents that Trustee has in his possession, custody, or control that he intends to use (except those for impeachment purposes) will be provided to counsel for Defendant.

**FRCP 26(a)(1)(A)(iii)**

The Trustee's damages are as pled in the Complaint. The Trustee contends the amounts identified as fraudulently transferred are recoverable damages. The damages are as yet unknown but at least in the tens of millions.

SUF 8 (*see* Decl. of Philip Warden ("**Warden Decl.**"), Ex. 3 (Plaintiff's Initial Disclosures).

Plaintiff's discovery responses likewise failed to articulate an actionable theory of damages from the CMI Notes Transfer. Hyundai requested such information in its Interrogatory No. 12, which asked: "State all facts that support YOUR allegation that the DEBTOR was harmed financially by the CMI NOTES TRANSFER." *See* SUF 9 (Warden Decl. ¶ 7, 9, Ex. 4 (Hyundai Interrogatory No. 12)). Plaintiff's amended response states:

Hyundai was able to obtain, through its exercise of control of the Debtor, the CMI Notes for a discounted valuation (the face value of which was far higher than any liability of Debtor associated with these assets) thereby preventing Debtor from realizing the value of the real property collateral/equity in the CMI Notes, which at the time was worth approximately $35,300,000. Debtor, for example, could have foreclosed on the real property collateralizing the CMI Notes, credit bid at the foreclosure auction, and obtained real property valued at approximately $35,300,000, ***potentially*** yielding millions of dollars in profit to Debtor. Debtor lost the equity in the CMI Notes as a result of the CMI Notes Transfer.

SUF 10 (Warden Decl. ¶ 7, 9 Ex. 4 (Plaintiff's Amended Response to Interrogatory No. 12) (emphasis added)). Likewise, none of the documents Plaintiff produced substantiate any damages from the CMI Notes or validate Plaintiff's hypothetical windfall whereby Prime could have "potentially" obtained "millions of dollars of profit" from selling the CMI Notes. SUF 11.

Discovery was originally set to close on September 1, 2021, but the deadline was extended

7

1   150 days, to January 31, 2022, upon Plaintiff's motion. Not. of Mot. and Mot. for Order (1)

2   Extending the Discovery Cutoff Date; and (2) Modifying the Scheduling Order, ECF No. 105.

3   Before the expiration of that extended deadline, Plaintiff was required to "provide [his] assessment

4   of damages in light of the information currently available to [him] in sufficient detail so as to enable

5   [the Defendant] to understand the contours of its potential exposure and make informed decisions as

6   to settlement and discovery." *Frontline Med. Associates, Inc. v. Coventry Health Care*, 263 F.R.D.

7   567, 569 (C.D.Cal. Nov. 6, 2009); *see also Erhart v. Bofi Holding Inc.*, No. 15-cv-02287-BAS-NLS,

8   2022 WL 84389, at *3 (S.D. Cal. Jan. 13, 2022) ("A computation of damages may not need to be

9   detailed early in the case before all relevant documents or evidence has been obtained by the

10  plaintiff. As discovery proceeds, however, the plaintiff is required to supplement its initial damages

11  computation to reflect the information obtained through discovery.") (citations and quotations

12  omitted); Fed. R. Civ. P. 26(a)(2)(E)[1] ("A party who has made a disclosure under Rule 26(a)—or

13  who has responded to an interrogatory… must supplement or correct its disclosure or response: …

14  (A) in a timely manner if the party learns that in some material respect the disclosure or response is

15  incomplete or incorrect, and if the additional or corrective information has not otherwise been made

16  known to the other parties during the discovery process or in writing."). Despite the extra time for

17  discovery and a clear obligation to supplement his deficient disclosures and his amended response to

18  Interrogatory No. 12, Plaintiff failed to cure his initial disclosure that the "damages are as yet

19  unknown," and never substantiated the windfall theory in his interrogatory response of the

20  "potential" to obtain "millions of dollars" from the CMI Notes Transfer. SUF 12.

21       Because Plaintiff had ample opportunity to conduct discovery but failed to satisfy his

22  obligation to substantiate his damages, he may not use any previously undisclosed information or

23  evidence in opposition to this motion. SUF at ¶ 1004. *F. R. Civ. Proc.* 37(c)(1)[2] ("If a party fails to

24  provide information … as required by Rule 26(a) or (e), the party is not allowed to use that

25  information … to supply evidence on a motion, at a hearing, or at trial, unless the failure was

26

27  [1] Made applicable by F. R. Bankr. P. 7026.
    [2] Made applicable by Fed. R. Bankr. P. 7037.

28

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

4866-1703-9902                                                          No. 8:19-ap-01216-ES

substantially justified or is harmless."); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."); *Erhart v. Bofi Holding Inc.*, No. 15-cv-02287-BAS-NLS, 2022 WL 84389, at *6 (S.D. Cal. Jan. 13, 2022) ("Where late disclosure of damages would likely require the Court 'to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date' a failure to disclose is not harmless.") (citations omitted); *Silver State Broad., LLC v. Bergner*, 705 Fed. Appx. 640 (9th Cir. 2017) (upholding exclusion of damages evidence for failure to include damages computation in initial disclosures).

### B.    The Hyundai 1-Year Transfers

Hyundai purchased scrap steel from Prime pursuant to the terms of the Supply Contract and separate contracts for each purchase of scrap steel signed by both Hyundai and Prime from October 1, 2015, through April 9, 2017. SUF 13. Each signed purchase contract was identical, except for the price per ton, quantity, and price of the scrap steel being purchased in each contract. SUF 14. An invoice, bill of lading, and related documents were generated for each separate purchase transaction. SUF 15. Each purchase contract required Hyundai to pay Prime by means of a letter of credit in favor of Prime, for 99% of the cost of each scrap steel purchase. SUF 16. Hyundai complied with each signed purchase contract by arranging for a third-party bank to issue the requisite letters of credit in Prime's favor. SUF 17. Shortly after each shipment of scrap steel was loaded on a ship bound for Korea, Prime was paid 99% of the purchase price by the issuing bank, on presentation of the invoice and other required documents generated for that purchase. SUF 18. The remaining 1% of the purchase price was due on discharge of the shipment at Hyundai's plant in Korea. SUF 19. In each instance, the remaining 1% was either paid in cash or offset against charges owed by Prime to Hyundai. SUF 20. Prime was not liable under any letter of credit, even if it did not ship scrap steel. SUF at ¶ 21. Prime was also not liable to Hyundai at any time for breach of contract, including under the governing purchase contracts for failing to deliver scrap steel to Hyundai during the period covered by the Hyundai 1 Year Transfers. SUF 22. In short, Prime was paid for each and every scrap steel shipment it sent Hyundai in accordance with the payment terms of the respective purchase

9

contracts and the overall Supply Contract. SUF 23.

The Hyundai 1 Year Transfers did not occur within 90 days of Prime's bankruptcy filing. SUF 24-25 (FAC ¶ 105, Ex. 10 (alleging that the last of the Hyundai 1 Year Transfers occurred on March 17, 2017, over 90 days before Prime's bankruptcy filing on November 17, 2017). No transfers of scrap steel from Prime to Hyundai occurred on the dates specified or in the dollar amounts indicated as the "Hyundai 1 Year Transfers" in paragraph 105 and Exhibit 10 of the FAC. SUF 26. Instead, what the alleged Hyundai 1 Year Transfers in Exhibit 10 of the FAC reflect are *payments to Prime* for scrap steel that Hyundai purchased; not transfers of scrap steel by Prime. SUF 27. Further, there was no antecedent debt owed by Prime on account of any scrap steel purchased by Hyundai, because—contrary to the unsubstantiated allegations in paragraph 105 of the FAC—no money was owed by Prime to Hyundai during the time period covered by the Hyundai 1 Year Transfers, on account of any failure by Prime to deliver scrap steel or otherwise. SUF 28.

### C.    The R-Techo Transfers

Plaintiff alleges that from August 2015 to December 2016,

> Prime Metals, through I.D. Kim and Gill Su Sun, caused to be transferred at least $1,800,000 (approximately 2.1 billion Korean won at the time) from Prime Metals to Hyundai ("R-Techo Transfers"). The R-Techo Transfers were transfers of cash that were extracted from Prime Metals and paid by R-Techo to Hyundai in Korea as part of Hyundai's scheme to extract all value out of Prime Metals.

SUF 29 (FAC ¶79). This alleged $1.8 million transfer is a subset of alleged $4 million fraudulent transfer judgment Plaintiff is seeking against R-Techo in the R-Techo Adversary Proceeding. SUF 30. Plaintiff does not allege, here or in the R-Techo Adversary Proceeding, the specific dates or amounts of the alleged R-Techo Transfers. SUF 31. Plaintiff has failed to provide any documentary or testimonial evidence that confirms the dates or amounts of specific payments supposedly transferred from Prime to R-Techo, and then from R-Techo to Hyundai. SUF 32. Yet, at no time did R-Techo pass along to Hyundai any funds or assets it obtained from Prime. SUF 33.

R-Techo is a Korean company that supplies scrap steel. SUF 34. All business between R-

10

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Techo and Hyundai has only been conducted overseas, in Korea. SUF 35. Hyundai did not control R-Techo, which has completely separate ownership and management than Hyundai. SUF 36. An R-Techo representative avers that he is not aware of any facts that suggest that Hyundai directly or indirectly controlled R-Techo's business or made business decisions for R-Techo. SUF 37. Hyundai does not own and never has owned any R-Techo shares. SUF 38. No R-Techo shareholders are employed by Hyundai. SUF 39.

### D. The CMI Notes Transfer

Plaintiff challenges Hyundai's purchase of the CMI Notes, alleging that the transfer should be avoided as an intentional or constructive fraudulent transfer and alleges that the "Central Metal Notes Transfer was the culmination of Hyundai's scheme to extract all assets and value from Prime Metals, the result of which left Prime Metals overburdened with debt, insolvent and bankrupt." SUF 40 (FAC ¶ 65). Plaintiff claims that the effect of this transfer was to extract "assets worth approximately $35,300,000, leaving Prime Metals in financial ruins and insolvent." *Id.*

Prime purchased the CMI Notes for $17,717,458.94 on December 29, 2014, using an interest-only loan from Shinhan Bank in the amount of $17,500,000 to fund the purchase. SUF 41. Hyundai facilitated the CMI Notes purchase by providing a guaranty to Shinhan Bank to secure Prime's loan. SUF 42. Because the interest Prime collected on the CMI Notes was higher than the interest Prime paid on its loan from Shinhan Bank, Prime made money on the CMI Notes as long as they were paid on a current basis. SUF 43. Before the CMI Notes were sold to Hyundai, however, they went into payment default, with the result that Prime had to pay the Shinhan Bank loan in October and December 2016, despite not receiving payments on the CMI Notes to fund the interest payments due to the bank. SUF 44. Hyundai loaned Prime money to cover those interest payments. SUF 45.

After two missed payments due to Prime on the CMI Notes in October and December 2016, Hyundai purchased the CMI Notes from Prime, pursuant to a Mortgage Loan Purchase and Sale Agreement dated December 28, 2016 ("**Purchase Agreement**"). SUF 46 (FAC Ex. 7; Oh Decl. Ex.

11

F). Hyundai paid Prime in excess of $17,858,430 for the CMI Notes. SUF 47.[3] As specified on page

9 of the Purchase Agreement, "the aggregate outstanding principal of the CMI Notes was

$17,518,141.52." SUF 48. Therefore, Hyundai's purchase price exceeded the total amount then

owed to Prime on the CMI Notes, and Hyundai paid the full cash value plus overdue and unpaid

interest on the notes, along with certain transactional costs. SUF 49. After the Shinhan Bank loan

was paid off, Prime's liabilities decreased by the loan amount of $17,610,649. SUF 50. Indeed,

Prime was not harmed by selling the CMI Notes to Hyundai; instead, Prime profited, offloaded the

notes despite the payment default, and was relieved of a sizeable obligation to Shinhan Bank. SUF

51.

The CMI Notes were secured by real estate owned by Mr. and Mrs. Byun, who had no

interest in Prime. SUF 52. After Hyundai sought to foreclose on the CMI Notes, the Byun Case was

filed—disputing Hyundai's right to collect the obligations evidenced by the CMI Notes. SUF 53-54.

Hyundai devoted more than $5,320,340 in legal fees, costs and other collection charges in its five-

year effort to enforce the CMI Notes. SUF 55. As a debtor in bankruptcy, Prime had no way to fund

such collection efforts. SUF 56. On December 22, 2021, Judge Zurzolo entered the Sale Order in the

Byun Case, authorizing the sale of underlying real estate for $35,150,000. SUF 57 (RJN Ex. G).

Pursuant to the Sale Order, Hyundai was paid out of the sale proceeds a portion of the amounts then

owed on the CMI Notes ($26,075,000), with a discount of over $2 million. SUF 58.

Contrary to Plaintiff's allegations, Hyundai did not complete a foreclosure on any of the real

estate securing the CMI Notes obligations and did not bid in at any foreclosure sale or take title to

---

[3] The total compensation that Prime received for the CMI Notes included the following amounts
categorized in paragraph 2 of the Purchase Agreement: (i) Prime's loan to Shinhan Bank in the
amount of $17,610,649; (ii) $144,379 in cancellation of an October 11, 2016 debt owed by Prime
(offsetting past due interest owed on one of the CMI Notes of $130,961.87 as stated in paragraph
4(l) of the Purchase Agreement); (iii) $108,839 in cancellation of an December 23, 2016 debt owed
by Prime (offsetting past due interest owed on one of the CMI Notes of $95,568.12 as stated in
paragraph 4(l) of the Purchase Agreement); (iv) accrued and unpaid interest under Prime's Shinhan
Bank loan, in excess of $26,087.78; (v) a prepayment premium owed by Prime to Shinhan Bank in
excess of $52,451.39; (vi) a guaranty fee owed to Shinhan Bank in excess of $2,333.33; and (viii);
closing costs in excess of $6,200. Oh Decl. ¶ 31.

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

any of the real estate securing the CMI Notes. SUF 59. Hyundai received only what it was entitled

to: payment of the amounts then owed on the CMI Notes. SUF 1005 (Cal. Civ. Code § 3302 ("The

detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due

by the terms of the obligation, with interest thereon.")). There was no windfall available to the

holder of the CMI Notes at any time. SUF 1005.

### E.      Hyundai's Relationships with Prime and R-Techo

Plaintiff based much of his case on allegations of a nefarious scheme through which Plaintiff

contends Hyundai controlled all aspects of all decisions made by Prime and used that control to

extract all value from Prime directly, or indirectly through R-Techo. SUF 60. Hyundai, however,

was not an insider and did not control Prime. SUF 61. Likewise, Hyundai was not an insider and did

not control R-Techo. SUF 62.

The evidence showing that Hyundai did not control Prime (SUF 61) includes:

- Hyundai maintains its separate corporate existence and did not disregard its separate
  corporate existence at any time during its business relationship with Prime. Oh
  Decl. ¶ 56.

- Prime was a corporation in good standing through the end of 2017. Warden Decl. ¶
  17 and Ex. 7.

- The prices negotiated for scrap steel purchased from Prime were similar to the
  prices Hyundai paid to other scrap steel suppliers. Oh Decl. ¶ 57

- Hyundai did not operate jointly with Prime in any respect, and Prime did not
  commingle funds or assets with Hyundai. Oh Decl. ¶ 58-59.

- Prime maintained its own books and records, bank accounts, employees and payroll
  and there was no overlap with Hyundai. Oh Decl. ¶¶ 60-63.

- Hyundai does not and did not own any stock in Prime. Oh Decl. ¶ 64.

- There was no overlap in management or employees between Prime and Hyundai.
  Oh Decl. ¶ 65.

- Hyudani did not control Prime employees Min Ho An or Gil Su Sun. Oh Decl. ¶ 66.

13

- Prime did not operate out of or use any business location maintained by Hyundai. Oh Decl. ¶ 67.

- Hyundai did not store Prime business records at a facility Hyundai leased at any time. Oh Decl. ¶ 68.

- Hyundai did not dictate Prime's day-to-day operations or broad policy decisions. Oh Decl. ¶ 69.

- In the SIC Hyundai Order in the SIC Metals Case, Judge Carney found that Hyundai's decision to stop purchasing scrap steel from Prime was "completely justified and undertaken to enforce its own contractual rights under the Supply Contract." RJN, Ex. N at 11.

- Former Hyundai employee, Minho An, who also worked for Prime, was never an executive of Prime or directly involved in management; he was merely responsible for the purchase and sale of steel scraps. Warden Decl. ¶ 18, Ex. 8 (Minho An Deposition Transcript ("**An Dep.**"), 11, 41:8-16.

- Mr. An was never an executive at Hyundai. An Dep. 42:8-16.

- Hyundai did not arrange for Mr. An to work at Prime. An Dep. 55: 7-14.

- Mr. An never attended a board meeting of Prime's board as a director and he did not own Prime shares. An Dep. 48:20-25, 49:1.

- Mr. An had no knowledge that Prime's liabilities exceeded its assets when he joined Prime or that Prime was unable to pay its debts as they came due as of the end of 2016. An Dep. 12.

- Mr. An stated that "It goes without saying that Hyundai Steel did not pursue the relationship with Prime Metals with ill intent at all." An Dep. 20: 7-9.

- Mr. An acknowledged that Prime from time to time declined to follow suggestions Hyundai made in respect to Prime. An Dep. 21:19-24.

- Mr. An, was unaware of "any collusion or threats or manipulation by Hyundai" relating to pricing of scrap steel Hyundai purchased from Prime. An Dep. 41:16-2.

14

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

- Mr. An testified he did not do anything that was improper while at Prime. An Dep. 47:18-21.

- Mr. An had no personal knowledge of "any money transmitted from Prime via R-Techo to Hyundai." An Dep. 35: 8-12.

- Prime's former shareholders lost on claims in the SIC Metals case that the purchase price for Prime's shares was artificially low and their suit against R-Techo was dismissed. Warden Decl. ¶¶ 20-24; RJN Exs. I-O.

- As confirmed by the engagement letter from attorney Hansin (Scott) Kim's law firm to Hyundai dated October 4, 2016, Mr. Kim, and his firm did not represent Hyundai during their representation of Prime in connection with the CMI Notes transaction. Oh Decl. ¶ 75, Ex I.

- Mr. Kim and his firm did not represent Prime and Hyundai at the same time, and specifically did not represent Hyundai in connection with the CMI Notes purchase. Oh Decl. ¶ 76.

- Likewise, at all times relevant in this adversary proceeding, Hyundai did not control Eugene Asset Management, MLK, or MKLUS. Oh Decl. ¶¶ 70-73.

- Hyundai also does not control or have an ownership interest in Hyundai Automobile Investment Securities, f/k/a HMC Investment Securities. Oh Decl. ¶ 74.

The evidence showing that Hyundai did not control R-Techo (SUF 62) includes:

- Hyundai and R-Techo have always maintained separate corporate entities conducting independent businesses. Oh Decl. ¶¶ 54, 56.

- Hyundai did not receive any funds from R-Techo that originated with Prime. Oh Decl. ¶¶ 3, 50-51.

- Hyundai does not and did not own any stock in R-Techo. Oh Decl. ¶¶ 3, 52.

- Hyundai has never controlled R-Techo which is separately owned and managed. Oh Decl. ¶¶ 3, 53.

- No R-Techo shareholders are employees by Hyundai. Oh Decl. ¶¶ 3, 55.

15

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

2

- Hyundai did not control R-Techo employee Gil Su Sun (who was also a Prime employee). Oh Decl. ¶ 66; FAC ¶ 71.

## V.    LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 56 (incorporating Fed. R. Civ. P. 56 to adversary bankruptcy proceedings). While the moving party has the burden of demonstrating the absence of a genuine issue of fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), a defendant may show the plaintiff lacks evidence to support his or her claim by argument alone, *i.e.*, "by pointing out through argument—the absence of evidence to support plaintiff's claim." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) (internal quotations omitted). "The moving party … has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case." *Sluimer v. Verity*, 628 F.Supp.2d 1099, 1105 (N.D. Cal. 2008), *affirmed* at 606 F.3d 584 (9th Cir. 2010). "The burden then shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id.* Specifically, the nonmoving party must support its position that a material fact is "genuinely disputed" by "citing to particular parts of materials in the records." Fed. R. Civ. P. 56(c)(1)(a). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The non-moving party's burden "is not a light one." *In re Oracle Corp. Sec. Lit.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, "[t]he non-moving party must show more than the mere existence of a scintilla of evidence" or "some 'metaphysical doubt' as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins

16

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   the motion for summary judgment." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). Further, a party

2   opposing summary judgment cannot rely upon conclusory assertions or speculation but must "show

3   a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in

4   his favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). Notably,

5   although the non-moving party is entitled to the benefit of reasonable inferences, such "inferences

6   cannot be drawn from thin air; they must be based on evidence which, if believed, would be

7   sufficient to support a judgment for the nonmoving party." *Am. Int'l Group, Inc. v. Am. Int'l Bank*,

8   926 F.2d 829, 836-37 (9th Cir. 1991). As the United States Supreme Court has held, implausible

9   inferences are insufficient. *Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587

10   (1986); *see also Day v. Sears Holdings Corp.*, 930 F.Supp.2d 1146, 1159 (C.D. Cal. 2013)

11   ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine

12   issues of fact and defeat summary judgment."). This standard applies whether the motion is for

13   complete or partial summary judgment. *See In re OCS, Inc.*, 552 F.3d 413, 417-18, 425 (5th Cir.

14   2008) (affirming bankruptcy court's entry of partial summary judgment regarding illegality of

15   business services agreements that impacted the proceedings); *see also* Fed. R. Civ. P. 56(a)

16   (amended and effective Dec. 1, 2010) ("A party may move for summary judgment, identifying each

17   claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

18        Summary judgment is not disfavored; it is designed to secure the just, speedy, and

19   inexpensive determination of every action. *Celotex*, 477 U.S. at 327. Indeed, by granting this motion,

20   this Court will advance "[o]ne of the principal purposes for the summary judgment rule," namely "to

21   isolate and dispose of factually unsupported claims." *Id.* at 323-24.

22   **VI.   PLAINTIFF CANNOT MEET HIS BURDEN ON ANY OF HIS CLAIMS**

23       **A.   Plaintiff Cannot Meet His Burden as to the Hyundai 1 Year Transfers
          (Counts 4 and 5)**

24           **1.   Plaintiff Cannot Prove Hyundai Received Prime's Property.**

25       Section 547(b) allows the Plaintiff to avoid "any transfer of an interest of [Prime] in property

26   …for or on account of an antecedent debt owed by [Prime] before such transfer was made." 11

27

28
                          17

U.S.C. § 547(b). Plaintiff has the burden to prove avoidability under Section 547(b), and if he fails to prove either of the two principal elements (transfer of the debtor's property; on account of the debtors' antecedent debt), then summary judgment must follow. *Id.* at § 547(g) ("[T]he trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section…."). Here, Plaintiff's preference claim relies on allegations that Prime transferred scrap steel to Hyundai with a value of $6,430,828.87 in the amounts and on the dates listed in Exhibit 10 of the FAC. FAC ¶105. Plaintiff alleges these transfers were for or on account of an antecedent debt because Prime "was indebted to Hyundai based on purchase contracts entered into in which Hyundai extended letters of credit under which Prime Metals was liable in the event that it did not ship the scrap steel." *Id.*

No evidence supports these allegations. The undisputed facts show that Hyundai did not receive the Hyundai 1 Year Transfers allegedly comprising Prime's scrap steel in the dollar amounts stated on the dates alleged in paragraph 105 and Exhibit 10 of the First Amended Complaint. SUF 24-27. Exhibit 10 to the FAC is a Prime accounting record that confirms *payments by Hyundai to Prime* for scrap steel Hyundai purchased from Prime, *not deliveries of scrap steel by Prime to Hyundai*. *Id.* Payments received by Prime are not transfers of an interest of Prime in property, and for this reason alone, summary judgment on Counts 4 and 5 is required.

**2.    Plaintiff Cannot Prove Prime Owed an Antecedent Debt to Hyundai**

Prime also cannot prove that the alleged Hyundai 1 Year Transfers were "on account of an antecedent debt owed by [Prime] before such transfer was made," as required to obtain a preference judgment. 11 U.S.C. § 547(b). Plaintiff alleges in paragraph 105 of the FAC that "Prime Metals was indebted to Hyundai based on purchase contracts entered into in which Hyundai extended letters of credit under which Prime was liable in the event that it did not ship the scrap steel." FAC ¶105. But the letters of credit were issued *in Prime's favor* to pay for scrap steel purchased by Hyundai, and Prime was not liable under them, even if it did not ship scrap steel. SUF 16, 21. In addition, Hyundai's records confirm that Prime was not liable for any missed shipments during the time period covered by the Hyundai 1 Year Transfers (November 23, 2016, through March 17, 2017). SUF 22. Simply put, Prime did not owe Hyundai an antecedent debt on account of which it was paid

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  at the time of the Hyundai 1 Year Transfers, which in any event were payments to Prime for scrap

2  steel Hyundai purchased, not obligations owed to Hyundai by Prime.

3  **3.    Plaintiff Cannot Prove Hyundai Was a Statutory Insider of Prime**

4  Because the Hyundai 1 Year Transfers did not occur within ninety days of Prime's

5  bankruptcy filing, Hyundai is entitled to summary judgment under Section 547(b)(4) unless Plaintiff

6  can establish that Hyundai is a statutory or non-statutory insider. *In re The Vill. at Lakeri*dge, LLC,

7  814 F.3d 993, 999 (9th Cir. 2016), aff'd sub nom. *U.S. Bank Nat. Ass'n ex rel. CW Capital Asset*

8  *Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960 (2018) (There are "two types of insiders:

9  statutory and non-statutory insiders."). This is a burden Plaintiff cannot meet.

10  "To be a 'statutory insider,' a creditor must fall within one of the categories listed in 11

11  U.S.C. § 101(31)." *Vill. at Lakeridge*, supra, at 996. "Whether a creditor is an insider is a factual

12  inquiry that must be conducted on a case-by-case basis." *Id.* at 1000. Here, the relevant question is

13  whether Hyundai qualifies as a statutory insider as a "person in control of the debtor." 11 U.S.C. §

14  101(31)(B)(iii). "As a matter of law, a statutory insider has a sufficiently close relationship with a

15  debtor to warrant special treatment." *In re The Vill. at Lakeri*dge, LLC, 814 F.3d at 999, (citation

16  omitted). A "person in control" is someone who has actual control over the debtor, which requires a

17  showing that the creditor can "unqualifiably dictate corporate policy and the disposition of corporate

18  assets," or has the "legal right or ability to exercise control over a corporate entity. *See, e.g., In re*

19  *U.S. Medical, Inc.,* 531 F.3d 1272, 1274 (10th Cir. 2008) (defining statutory insider control and

20  finding it was not present where the creditor was the debtor medical equipment distributor's sole

21  laser manufacturer, and the creditor acquired a 10.6% equity interest in the debtor).

22  As discussed above, in Section IV.E, and as established in Hyundai's SUF, Plaintiff's

23  allegations relating to alleged control of Prime by Hyundai are unsubstantiated and untrue. In

24  particular, the allegations the Court flagged in denying Hyundai's motion to dismiss are baseless.

25  *See* Order on Def.'s Mot. to Dismiss FAC, ECF No. 51, at 11. Specifically, Hyundai did not own

26  any R-Techo or Prime shares, Prime employees Min Ho An and Gill Su Sun were not controlled by

27  Hyundai, Prime business records were not stored a facility Hyundai leased, and Hyundai and Prime

28

19

were not represented by the same attorneys during negotiations relating to the CMI Notes Transfer.

Furthermore, the only allegations relating to control that may have evidentiary support are insufficient to establish Hyundai as a Prime insider. These allegations include:

- Hyundai represented up to 90% of Prime's business
- Sometimes Prime financial reports were provided to Hyundai, and
- Hyundai paid Prime's legal expenses relating to the CMI Notes as part of the consideration for the CMI Notes.

Such allegations do not generate a genuine issue of fact with respect to insider status because they do not establish the level of control required to find statutory insider control over a debtor. *In re The Vill. at Lakeridge, LLC,* 814 F.3d at 999 (citation omitted); *In re Winstar Commc'ns, Inc.,* 554 F.3d 382, 396, n. 5 (3d Cir. 2009) (concluding in the context of a statutory insider claim that there "must be day-to-day control, rather than some monitoring or exertion of influence regarding financial transactions in which the creditor has a direct stake" to justify a finding that a defendant is a statutory insider based on control) (citations and quotations omitted); *In re U.S. Medical, Inc.,* 531 F.3d at 1274 (defining control for a statutory insider and finding that control was not present where the creditor was the debtor equipment distributor's sole manufacturer).

As Min Ho An, the Prime employee purported by Plaintiff to have been under Hyundai's control, stated during his deposition,

> 10 A. Well, as far as Hyundai Steel and Prime
> 11 Metals are concerned, I don't think that
> 12 relationship can be described as -- as that of
> 13 control. Rather, since they were a customer and
> 14 company relationship, so it was more of a making
> 15 request of each other.

An Dep. 18.

Thus, Plaintiff cannot establish Hyundai was "in control" as required to be a statutory insider.

### 4. Plaintiff Cannot Prove Hyundai Was a Non-Statutory Insider of Prime

"A non-statutory insider is a person who is not explicitly listed in § 101(31), but who has a sufficiently close relationship with the debtor to fall within the definition." *Vill. at Lakeridge,* 814

1  F.3d at 999. To qualify as such, a plaintiff must establish two conditions: "(1) the closeness of its

2  relationship with the debtor is comparable to that of the enumerated insider classifications in §

3  101(31), and (2) the relevant transaction is negotiated at less than arm's length." *Id.* at 1001. "A

4  court cannot assign non-statutory insider status to a creditor simply because it finds the creditor and

5  debtor share a close relationship." *Id*. Like any large customer, the Hyundai relationship was

6  arguably important to Prime and may have influenced certain business decisions, but a meaningful

7  relationship with a large customer does not establish a non-statutory insider claim. *Id*. Plaintiff

8  cannot prove that Hyundai did anything to influence Prime's business decisions beyond being

9  Prime's primary customer. *See, e.g., In re Yonkers Hamilton Sanitarium Inc*., 22 B.R. 427, 430

10  (Bankr. S.D.N.Y. 1982), aff'd, 34 B.R. 385 (S.D.N.Y. 1983) ("[A] corporate debtor may be

11  influenced by the demands of its major customers or creditors but such influence alone does not

12  constitute the requisite voting control contemplated under Code…for purposes of defining a person

13  in control of a corporate debtor who might be regarded as an 'insider'."); *see also, In re Friedman*,

14  126 B.R. 63, 70 (B.A.P. 9th Cir. 1991) ("[W]hile a creditor may be in a strong bargaining position in

15  dealing with the debtor, so long as the parties transact their business at arm's length, such

16  circumstances do not necessarily give rise to insider status even though there was some degree of

17  personal relationship with the debtor…."").

18      The fact that Plaintiff cannot establish Hyundai was an insider or in control Prime also means

19  that Hyundai's intent cannot be imputed to Prime with respect to Plaintiff's intentional fraudulent

20  transfer claim (Count 1). *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 339 (Bankr. N.D.

21  Cal. 2009) ("Generally, the party attacking the transfer must show the debtor/transferor acted with

22  actual intent" but intent can be imputed when "the transferee controls or is in a position to control

23  the debtor/transferor's disposition of its property") (*citing Acequia, Inc. v. Clinton (In re Acequia,

24  Inc.)*, 34 F.3d 800, 806 (9th Cir.1994)); *In re Elrod Holdings Corp*., 421 B.R. 700, 712 (Bankr. D.

25  Del. 2010) (before imputing fraudulent intent, "[c]ourts have required formal, legal control as well

26  as functional control" of the transferor). Plaintiff does not contend that Prime intended to hinder,

27  delay, or defraud its creditors; relying instead on unsubstantiated allegations that Hyundai engaged

28

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

in a scheme to strip Prime of all of its value. FAC at ¶¶39, 50, 52, 65, 79, 122, 130. Since Hyundai

was neither a statutory no non-statutory insider of Prime, and did not control Prime directly or

indirectly, Count 1 of the FAC fails as to CMI Notes—and the R-Techo Transfers.

**B.**    **Plaintiff Cannot Meet His Burden as to the R-Techo Transfers (Counts 1 -3)**

**1.**    **Plaintiff Cannot Prove Hyundai Received Funds Fraudulently Transferred from Prime to R-Techo**

The R-Techo Transfers are a subset of the alleged fraudulent transfers that are the subject of

the R-Techo Adversary Proceeding. SUF 30. They are comprised of funds allegedly transferred from

Prime to R-Techo from June 12, 2015, to November 30, 2016. RJN Ex. B at ¶ 45; Oh Decl. Ex H (R-

Techo Adversary Proceeding Compl., Ex. 3). Under the Plaintiff's theory, both here and in the R-

Techo Adversary Proceeding, R-Techo is the initial transferee, not Hyundai, and Hyundai allegedly

received funds fraudulently transferred from Prime to R-Techo and then from R-Techo to Hyundai.

In other words, Plaintiff contends that R-Techo was the initial transferee, and that Hyundai was a

subsequent transferee, or a person for whose benefit the transfer was made under Section 550(a)(1).

As a threshold matter, Plaintiff can only avoid a transfer as a fraudulent under Section 548 or

state law if he can show that there was a transfer of *Prime's* property. 11 U.S.C. § 548(a)(1) (the

"trustee may avoid any transfer … of an interest of the debtor in property"); Cal. Civ. Code §

3439.01(j) and (m) (Transfer "means every mode … of disposing of or parting with an asset or an

interest in an asset," and the term asset means "property of a debtor"). Here, Plaintiff cannot show

that Hyundai received any funds that were transferred fraudulently from Prime to R-Techo. R-Techo

and Hyundai did business solely offshore, in Korea, and their transactions did not involve funds or

product that originated with Prime, which was based in the United States. SUF 63. Further, R-Techo

maintains a database of electronic records of "all sales of scrap steel and all income and expenses

relating to its customers and vendors." SUF 64. A search of these records by R-Techo's custodian of

records revealed "there were never any funds or assets R-Techo obtained from Prime that R-Techo

passed along or transferred to [Hyundai]." SUF 65. Hyundai's records likewise confirm that

Hyundai did not receive any funds from R-Techo in or around the times stated or in the amounts

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

indicated in respect to the R-Techo Transfers. SUF 66. Moreover, Plaintiff has produced no

documentary evidence of the alleged transfer, and has not documented any transfer, for $1.8 million

or otherwise, to R-Techo from Prime and then from R-Techo to Hyundai. SUF 31-32.

Furthermore, Prime's own former employee, Mr. An, averred under oath that such a transfer

to R-Techo did not occur:

> 8 Q. What we're talking about is the More
> 9 Steel. There never was any money transmitted from
> 10 Prime via R-Techo to Hyundai; isn't that right?
> 11 A. Correct. There isn't any, as far as I'm
> 12 concerned.

SUF 68 (An Dep. 35).

In sum, Plaintiff cannot show that Hyundai received $1.8 million from R-Techo that R-Techo

had received from Prime.

### 2.    Plaintiff Cannot Prove Hyundai Controlled Prime Through R-Techo

As discussed above, Hyundai is not a statutory or non-statutory insider of Prime, directly or

indirectly through R-Techo. Among other things, Hyundai never owned R-Techo shares or otherwise

controlled R-Techo's business or business decisions, R-Techo was and is under completely separate

management, and both Hyundai and R-Techo carefully maintain separate corporations. R-Techo

may have gained control of Prime by purchasing its shares, but Hyundai did not.

### 3.    Plaintiff May Not Impute Hyundai's Intent to Prime

Because Plaintiff cannot establish that Hyundai is an insider of Prime, Hyundai's intent

cannot be imputed to Prime. Without evidence that Prime intended to hinder, delay or defraud

creditors, which has not been presented here, Plaintiff's R-Techo Transfer claim cannot succeed.

### 4.    Plaintiff Lacks Standing to Pursue the R-Techo Transfer Claim

Plaintiff bases his R-Techo claims in part on the premise that R-Techo and Hyundai

conspired to underpay for Prime's stock. SUF 68 (FAC ¶ 37). Even if true, such a claim would have

been owned by Prime's former shareholders, not Plaintiff, and losses to Prime's shareholders are not

harm to the company itself. SUF 1014. Moreover, Prime's shareholders asserted this claim in the

---

23

SIC Metals Case and lost. SUF 69. Further, since Prime itself was not harmed even if Prime

shareholders were underpaid for their stock, Plaintiff lacks standing to bring this claim. *Smith,* 421

F.3d at 1002 ("it is well settled that a bankruptcy trustee may only assert claims held by the bankrupt

corporation itself") (citations omitted); *CAMOFI Master LDC v. Associated Third Party*

*Administrators*, No. 16-CV-00855-EMC, 2018 WL 839134, at *3 (N.D. Cal. Feb. 13, 2018) (in

bankruptcy proceedings, direct and derivative claims are mutually exclusive such that "the right of

action and recovery belong[s] either to the shareholders (direct action) or to the corporation

(derivative action)"); *see also*, *Hayes v. Gross*, 982 F.2d 104, 108 (3d Cir. 1992) (holding under

securities law share purchaser's suit to recover difference between inflated price he paid for his stock

and the price he would have paid had officers and directors made accurate statements regarding the

company was a direct claim of the shareholder). The emphatic rejection of the claims brought by

Prime's shareholders on the theory that they were underpaid bars Plaintiff from using this theory to

establish R-Techo and Prime conspired to loot Prime of value. *In re Berr*, 172 B.R. 299, 306 (B.A.P.

9th Cir. 1994) ("once an issue is actually and necessarily determined by a court of competent

jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action

involving a party to the prior litigation").

### 5.    Plaintiff Cannot Prove Prime Funds Were Transferred to R-Techo for Hyundai's "Benefit"

Additionally, because Hyundai is not an initial transferee under Section 550 (b)(1), Plaintiff

could only recover funds transferred to R-Techo by Prime under this section if he could prove

Hyundai was an "entity for whose benefit" the *initial* alleged fraudulent transfers from Prime to R-

Techo were made. *In re Bullion Rsrv. of N. Am*., 922 F.2d 544, 548 (9th Cir. 1991) (Because the

defendant was not the initial transferee, the plaintiff could only recover under section 550(b)(1) if the

defendant was an "entity for whose benefit the transfer was made."). To establish that Hyundai was

the intended beneficiary of a transferee from Prime to R-Techo, Plaintiff is required to show that the

*debtor,* Prime, was "motivated by an intent to benefit the individual or entity from whom the trustee

seeks to recover." *In re Bullion Rsrv.*, 922 F.2d at 547 (*quoting In re Universal Clearing House Co.,*

62 B.R. 118, 128 n. 12 (D. Utah 1986)). "It is not enough that an entity benefit from the transfer; the transfer must have been *made for his benefit*." *Id* (emphasis in original). Plaintiff has not produced and cannot point to any evidence that supports the assertion that Prime made payments to R-Techo for the benefit of Hyundai. Prime's intent cannot be inferred from Hyundai's intent since Hyundai is not an insider, and there is no evidence to support Plaintiff's contention that Prime intended to benefit Hyundai when it made the alleged fraudulent transfers to R-Techo. For this reason, Plaintiff cannot recover from Hyundai under Section 550(a)(1).

### C.    Plaintiff Cannot Meet His Burden as to the CMI Notes Transfer (Counts 1-3)

Plaintiff's sole explanation as to why the CMI Notes Transfer is a fraudulent transfer claim is that Hyundai received a windfall when it purchased the notes because it could have foreclosed on the real property securing the CMI Notes obligations, bid in at a foreclosure sale, and taken title to property worth $35 million. SUF 8, 10, 70. That theory is not factually supported and is incorrect as a matter of law. Hyundai did not bid in at a foreclosure sale and did not take title to real property worth $35 million. SUF 71. Hyundai only secured partial payment of the amounts owed on the CMI Notes nearly five years after purchasing the notes and after spending millions to collect on them. SUF 72. Because Plaintiff cannot show that Hyundai received or was entitled to a windfall when it paid the full value of the CMI Notes in exchange for the right to enforce them against borrowers who were in default, summary judgment should be granted on Counts 1-3 with regard to the alleged CMI Notes Transfer.

### 1.    Prime Benefitted from Purchasing and Selling the CMI Notes

During the time Prime owned the CMI Notes, the difference in the interest rates that CMI owed to Prime and Prime owed Shinhan Bank allowed Prime to make an arbitrage profit. SUF 43. Once payments on the CMI Notes went into default, however, Prime had a continuing obligation to Shinhan Bank with no payments from the CMI Notes to offset its obligation to the bank. SUF 44. When it acquired the CMI Notes from Prime, Hyundai paid all the past-due and unpaid interest accrued on the CMI Notes. SUF 49. Thus, the net worth of Prime was not reduced by the transfer of

25

the CMI Notes. SUF 73. Nor were Prime's creditors harmed by the transfer. SUF 74. To the contrary, Prime profited from owning the CMI Notes then sold the non-performing CMI Notes to Hyundai at face value and at no expense to itself and eliminated its obligation to repay Shinhan Bank, thereby improving its financial situation. SUF 75. Moreover, since Prime was insolvent, it lacked the resources to fund the protracted and expensive process that Hyundai went through to collect, even partially, on the CMI Notes. SUF 76.

### 2.    Plaintiff Cannot Prove His Theory of Windfall Profits

Plaintiff posits his CMI Notes fraudulent transfer claim on the unsupported theory that Hyundai received a windfall because it could supposedly collect all the equity in the real properties used to collateralize the CMI Notes, after hypothetically bidding in at a foreclosure sale and taking title to the real property, which had an estimated value of $35 million. SUF 9-10. But Hyundai did complete a foreclosure sale and did not take title to any real property worth $35 million. SUF 59. Further, even if such a foreclosure sale had taken place, there was no possible windfall, because all that Hyundai was entitled to was repayment of the amounts owed on the CMI Notes, plus interest and attorney's fees and other collection expenses. SUF 1017. Cal. Civil Code § 3302 ("The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."). No different result would have been reached if the mortgages were foreclosed. Restatement (Third) of Property (Mortgages) § 7.4 (1997) ("When the foreclosure sale price exceeds the amount of the mortgage obligation, the surplus is applied to liens and other interests terminated by the foreclosure in order of their priority and the remaining balance, if any, *is distributed to the holder of the equity of redemption*") (emphasis added); California Mortgages, Deeds of Trust, and Foreclosure Litigation §2.1 (4th ed. Cal. CEB 2021) ("On completion of the [foreclosure] process… The creditor receives as much of the sales proceeds as are needed to satisfy the debt, and any surplus passes to those holding other foreclosed interests in their order of priority"); *Id.* §2.102 (4th ed. Cal. CEB 2021) (following a trustee sale, pursuant to Civ. Code § 2924k(a) "the trustee must disburse the sale proceeds in the following order …1. Reimburse its own costs and expenses of the sale…2. Satisfy the debt owed to the foreclosing beneficiary; 3.

26

1   Pay junior lienholders…*4. Pay any surplus to the trustor or its successor*") (emphasis added). In line

2   with these principals, Judge Zurzolo in the Byun Case entered the Sale Order which approved a

3   compromise between Hyundai and Mr. Byun that resulted in Hyundai accepting $26,075,000 from

4   sale proceeds and waiving an additional amount over $2 million that Hyundai claimed was due

5   under the CMI Notes. SUF 58. RJN Ex. G (Sale Order) at 9, 17. That court described this settlement

6   as "extremely fair and reasonable, and in the best interest of the Estate and it will create the

7   opportunity for the best interest of every creditor or nearly every creditor to have some satisfaction.".

8   RJN Ex. G (Sale Order) at 9.

9   **3.     Plaintiff Is Bound by His Failure to Specify Damages**

10          Plaintiff is required to demonstrate both the right to recover fraudulent conveyances and the

11   "amount of recovery" under Section 550(a) of the Bankruptcy Code. *In re Acequia, Inc.*, 34 F.3d

12   800, 809 (9th Cir. 1994). But Plaintiff failed to allege any specific damage amount, and he failed to

13   describe any associated damages in his mandatory Rule 26 statement or his answers to Hyundai's

14   interrogatories. SUF 8-12. Instead, Plaintiff relies on a hypothetical that is inconsistent with

15   California and federal law, and in any case not what happened in respect to the CMI Notes.

16          Because Plaintiff failed to provide information regarding the Prime bankruptcy estate's

17   damages, as required by Rule 26(a)(iii), he "is not allowed" to provide such information at this point

18   in the case. SUF 1018. Fed. R. Civ. P. § 37(c)(1); F. R. Bankr. P. § 7037 (applying FRCP 37 to

19   adversary proceedings); *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir.

20   2011) (holding Rule 37 "gives teeth" to the Rule 26 disclosure requirements "by forbidding the use

21   at trial of any information that is not properly disclosed…Rule 37(c)(1) is a 'self-executing,'

22   'automatic' sanction designed to provide a strong inducement for disclosure") (quoting Fed.R.Civ.P.

23   37 Advisory Committee Note (1993)) (*citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d

24   1101, 1106 (9th Cir. 2001)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the

25   failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827 (citing Fed. R.

26   Civ. P. 37(c)(1)). Stating that "damages are as yet unknown" and failing to ever provide a

27   computation of damages is not harmless. *See Drayton v. Eastlink Prods., Inc.*, No.

28

27

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

217CV06408VAPPJWX, 2019 WL 650418, at *2 (C.D. Cal. Jan. 2, 2019) (listing cases)*;* ("[T]he plaintiff's failure to provide any information whatsoever about the computation of his damages is harmful to the defendants, as they have no way to defend against the plaintiff's damages claims"). Nor is the Plaintiff's failure to provide damages information justified. Plaintiff had more than six months to complete discovery after he served his initial disclosures, and then was granted an additional five months to perform discovery. Yet at no point during this eleven-month period did Plaintiff make the required disclosure of his damages or articulate, document or describe, any damages that arose from the CMI Notes Transfer in response to Hyundai's Interrogatories. SUF 8-12. Instead, Plaintiff's response merely theorized that Hyundai's purchase of the CMI Notes "prevent[ed] Debtor from realizing the value of the real property collateral/equity in the CMI Notes, which at the time was worth approximately $35,300,000." *Id.* This theory lacks legal or factual support.

### 4.    Plaintiff Waived His Right to Challenge the CMI Notes Transfer

Plaintiff has been monitoring the Byun Case and had his own representatives at the sale hearing. SUF 77. If Plaintiff wanted to preserve his rights to avoid the transfer of the CMI Notes and retain the benefit of those notes for the bankruptcy estate, he was required to seek an order in the Byun Case. SUF 1019. 11 U.S.C. § 1109(b) ("A party in interest…may raise and may appear and be heard on any issue in a case under this chapter"); *see also Matter of James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) ("[A]nyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims."); *In re Thorpe Insulation Co.*, 677 F.3d 869, 884-86 (9th Cir. 2012) (certain of debtor's insurers had standing to object to reorganization plan because they could be bound by resulting trust's determination of liability for asbestos claims and settlement affected their rights to recover costs against settling insurers); *In re Zaleha*, 162 B.R. 309, 314 (Bankr. D. Idaho 1993) (The term "'party in interest' includes 'creditors;' it therefore includes parties holding contingent, unliquidated,

28

disputed claims" including purchaser of a claim against a bankrupt); Fed. R. Bankr. P. 2018(a)

("[T]he court may permit any interested entity to intervene generally or with respect to any specified

matter"); Fed. R. Bankr. P. 7065 (applying Fed. R. Civ. P. section 65 to adversary proceedings; *In re*

*Parker*, 499 F.3d 616, 628 (6th Cir. 2007) ("The Bankruptcy Court has jurisdiction to enjoin

proceedings in other courts commenced after the filing of the petition in bankruptcy which interfere

with the proper administration of the Bankrupt's estate.") (quotations and citations omitted). Yet

Plaintiff took no action to oppose the sale in the Byun Case or otherwise assert an interest in the

CMI Notes before Judge Zurzolo entered the Sale Order authorizing the sale of real estate and

payment to Hyundai on account of the CMI Notes. SUF 78.

By failing to object to the sale and specifically the Court-approved comprise payment to

Hyundai on account of the CMI Notes, Plaintiff waived his right to recover on those notes in this

adversary proceeding. SUF 1020 *see, e.g., FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 285 (7th

Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be

extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder,

and lack of objection (provided of course there is notice) counts as consent."); RJN Ex. G (Sale

Order) at 6 ("All parties with a security, leasehold, or possessory interest in the Property, and all

other parties in interest received sufficient opportunity to object to the Sale Motion, and otherwise

received due process with respect to the Sale.").

## 5.    Plaintiff Cannot Prove Prime Received Less Than "Reasonably Equivalent Value"

Hyundai is also entitled to summary judgment on Plaintiff's constructive fraudulent transfer

claims for the CMI Notes because Prime received reasonably equivalent value for the CMI Notes.

Under 11 U.S.C. § 548(a)(1)(B) and California Civil Code § 3439.04(a)(2) "constructive" fraudulent

transfers can only be avoided when the transfer was made for less than "reasonably equivalent

value." Reasonably equivalent value is measured at the time of the sale of the CMI Notes and is

determined from the creditor's perspective, not the debtor's perspective under the Bankruptcy Code

and California's fraudulent transfer statute. *In re Automated Fin. Corp.*, 2011 WL 10502417, at *5

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

4866-1703-9902                                                                No. 8:19–ap–01216–ES

1  (Bankr. C.D. Cal. Jan. 25, 2011) ("Reasonably equivalent value is the value of the property on the

2  date of the transfer from the perspective of the creditors.") (citing *In re Prejean*, 994 F.2d 706, 708

3  (9th Cir. 1993). Courts assessing whether a debtor received reasonably equivalent value determine

4  whether the debtor's net worth has been preserved and whether the interests of the debtor's creditors

5  were injured by the transfers. *In re N. Merch., Inc.*, 371 F.3d 1056, 1059 (9th Cir. 2004) ("the

6  primary focus of Section 548 is on the net effect of the transaction on the debtor's estate and the

7  funds available to the unsecured creditors"); Civil Code § 3439.03 ("Value is given for a transfer or

8  an obligation if, in exchange for the transfer or obligation, property is transferred *or an antecedent*

9  *debt is secured or satisfied*") (emphasis added). *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141,

10  1145–46 (9th Cir. 2013) ("'[p]ayment of a preexisting debt is value, and if the payment is dollar-for-

11  dollar, full value is given.' Therefore, to the extent a transfer constitutes repayment of the debtor's

12  antecedent or present debt, the transfer is not constructively fraudulent.") (*quoting* 5 Collier on

13  Bankruptcy ¶ 548.03[5] (16th ed. 2012)).

14      As the Court recognized in its Order granting Hyundai's third motion to dismiss (ECF No.

15  57), Prime received value for the CMI Notes Transfer when Hyundai paid Prime's loan to Shinhan

16  Bank. Moreover, for the reasons explained in detail above, there was no equity windfall available to

17  the holder of the CMI Notes, who was entitled only to collect the amounts owed on the CMI Notes,

18  plus interest and fees. Hyundai did not foreclose and take title to property worth more than $35

19  million. SUF 53-54, 57-59. Prime's balance sheet and net worth did not change when the CMI Notes

20  were sold because Prime's debt to Shinhan Bank was discharged. SUF 73. Simply put, Prime and its

21  creditors were not harmed by the purchase or sale of the CMI Notes. SUF 74.

22      Plaintiff can also put forth no admissible evidence that at the time Prime sold the CMI Notes,

23  when they were in default, and when Prime was insolvent, that Prime had the resources to engage in

24  the incredibly expensive and lengthy process Hyundai was forced to follow to enforce them.

25      **6.    Plaintiff Cannot Prove the CMI Notes Transfer Was Not at Arm's
              Length**

26

27      Plaintiff also cannot meet his burden to prove the negotiations regarding the CMI Notes

28
30

Transfer were not conducted at arm's length. Paying the face amount owed on notes in payment default when the note maker was in default and heading to bankruptcy is hardly evidence that negotiations were not arm's length. Under these circumstances, were Hyundai an insider seeking some unfair advantage, it could have extracted a discounted purchase price, but instead paid more than the face value of the CMI Notes plus past due interest on them.

### 7.    Plaintiff May Not Impute Hyundai's Intent to Prime

As discussed above, Plaintiff failed to adduce evidence that supported his claim that Hyundai is an insider of Prime, and Hyundai's intent cannot be imputed to Prime. Without such evidence Plaintiff's CMI Notes Transfer claim cannot succeed.

### D.    Plaintiff Cannot Meet His Burden on the Alter Ego Claim (Count 6)

Plaintiff's alter-ego claim is premised on the fraudulent transfer claims relating to the R-Techo Transfers and the CMI Notes Transfer, and should be dismissed because Plaintiff cannot prevail on these two claims, and because plaintiff cannot show that Hyundai was an insider of and in control of Prime. Plaintiff cannot provide his fraudulent transfer claims or provide evidence that shows how, exactly, Prime was harmed by any of the challenged transfers. Plaintiff 's allegations that Hyundai controlled Prime are likewise not supported by the evidence which instead establishes that Hyundai did not control Prime directly, or indirectly through R-Techo.

At this late stage, with discovery now complete, Plaintiff has the burden of actually adducing substantive, admissible evidence proving his alter ego theory. *Matter of Christian & Porter Aluminum Co*., 584 F.2d 326, 337 (9th Cir. 1978) at 338 ("California law provides that the party seeking to have the corporate entity disregarded has the burden of proving that the alter ego theory should be applied."); *21 Century Fin. Serv., LLC v. Manchester*, 255 F.Supp.3d 1012, 1022 (S.D. Cal. June 8, 2017) (same). Courts recognize that disregarding separate corporate entities should be approached with caution. *Pac. Landmark Hotel, Ltd. v. Marriott Hotels, Inc.*, 19 Cal. App. 4th 615, 628 (1993) ("Since society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that disregard of those separate corporate entities be approached with caution."). Therefore, to meet its burden, Plaintiff

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   must overcome California's "presumption of the separate existence of the corporate entity." *Mid-*

2   *Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212-13 (1992). Specifically, Plaintiff is required

3   to make "a showing that the parent controls the subsidiary to such a degree as to render the latter the

4   mere instrumentality of the former," such that the "parent dictates every facet of the subsidiary's

5   business, from broad policy decisions to routine matters of day-to-day operations." *Gerritsen v.*

6   *Warner Bros. Entertainment Inc.,* 116 F.Supp.3d 1104 ,1138-40 (U.S. Dist. Court, C.D. Cal. 2015)

7   (citing *Doe v. Unocal Corp.,*248 F.3d 915, 926-27(9th Cir. 2001) (in turn quoting *Rollins Burdick*

8   *Hunter of Southern California, Inc. v. Alexander & Alexander Services, Inc.,* 206 Cal. App. 3d 1,

9   (1988))).

10          Plaintiff's burden on the alter ego count is even higher than his burden to establish that

11   Hyundai is a statutory or non-statutory insider. The California Supreme Court, has adopted two

12   general requirements for alter-ego liability: "… (1) that there be such unity of interest and ownership

13   that the separate personalities of the corporation and the individual no longer exist'; and (2) that, 'if

14   the acts are treated as those of the corporation alone, an inequitable result will follow.'" *Pac. Bell*

15   *Tel. Co. v. 88 Connection Corp.*, No. 15-cv-04554-LB, 2016 WL 3257656, at *3 (N.D. Cal. June 14,

16   2016) (citations omitted); *Mesler v. Bragg Mgmt. Co*., 39 Cal. 3d 290 (1985) (establishing alter-ego

17   factors under California law). As discussed above, Plaintiff cannot establish that Hyundai was either

18   a statutory or a non-statutory insider of Prime. Given the presumption of the separate existence of

19   corporate entities, and that the test to establish alter ego status is even higher than his burden to

20   prove statutory or non-statutory insider status, the Court should grant summary judgment on the alter

21   ego claim.

22          Furthermore, there no inequitable result here if the Court grants Hyundai's motion. "The kind

23   of 'inequitable result' that makes alter ego liability appropriate is an abuse of the corporate form,

24   such as under-capitalization or misrepresentation of the corporate structure to creditors.... No

25   specific finding of bad faith is required if such an abuse is found." *Orloff v. Allman*, 819 F.2d 904,

26   909 (9th Cir. 1987), abrogated on other grounds by *Hollinger v. Titan Capital Corp*., 914 F.2d 1564

27   (9th Cir. 1990). "California courts generally require some evidence of bad faith conduct on the part

28

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

of defendants before concluding that in inequitable result justifies an alter ego finding." *Cambridge Elec. Corp. v. MGA Elec., Inc.,* 227 F.R.D. 313, 331 (C.D. Cal., Jun. 22, 2004) (*citing Mid-Century, supra,* at 1213.). In the absence of evidence that Hyundai undercapitalized Prime, misrepresented the corporate structure to Prime's creditors, engaged in bad faith conduct, or caused harm to Prime's creditor, the California presumption of the separate existence the corporate entity mandates that this Court grant summary judgement in favor of Hyundai. *Mid-Century* at 1212-13. For this reason, particularly if this Court grants Plaintiff's motion on the fraudulent transfer claims, Hyundai is entitled to summary judgment on the alter ego claim.

## VII.    RELIEF REQUESTED

For the reasons stated in this motion, Hyundai respectfully requests that this Court grant summary judgment on all remaining counts in this adversary proceeding, or, in the alternative, grant partial summary judgment as to the individual claims as to which Plaintiff cannot meet his burden of proof.

Dated: May 5, 2022

PILLSBURY WINTHROP SHAW
PITTMAN LLP

By    David Stanton

Attorneys for Defendant Hyundai
Steel Company

**DEFENDANT HYUNDAI STEEL COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**